USDC SCAN INDEX SHEET

















RYC    6/9/06    9:27

3:05-CV-01359   RIPPEE V. BOSTON MARKET CORP

*53*

*P/A.*

**LORENS & ASSOCIATES, APLC**
L. Tracee Lorens (SBN 150138)
Wayne Alan Hughes (SBN 48038)
1202 Kettner Blvd., Suite 4100
San Diego, CA 92101
Telephone: 619.239.1233
Facsimile: 619.239.1178

**CADENA CHURCHILL, LLP**
Raul Cadena (SBN 185787)
1202 Kettner Blvd., Suite 4100
San Diego, CA 92101
Telephone: 619.546.0888
Facsimile: 619.234.3641

Attorneys for Plaintiff and all others similarly situated

FILED

06 JUN -7 PM 3: 19

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACLYN RIPPEE, an individual; and ROES 1-10 on behalf of themselves and in a representative capacity for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOSTON MARKET CORPORATION, and DOES 1 through 50, inclusive<br><br>Defendants. | Case No. 05 CV 1359 BTM (JMA)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  June 14, 2006<br>Time:  2:00p.m.<br>Judge:  Hon. Barry T. Moskowitz<br>Courtroom:  15, 5th Floor<br><br>[APPEARANCE REQUIRED] |

53 nyc

ORIGINAL

-1-

1

## **TABLE OF CONTENTS**

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Procedural & Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    The Parties Have Reached an Immediate Monetary Settlement Fund of $3,750,000.00
        plus Future Monetary Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     Test for Determining Whether Class Settlement Is Fair Adequate and Reasonable . . . 6

        A.      Strength of the Plaintiffs' Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      The Expense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.      Complexity and Likely Duration of Further Litigation . . . . . . . . . . . . . . . . . 12

        D.      The Risk of Maintaining Class Action Status Through Trial . . . . . . . . . . . . . 13

        E.      The Amount Offered In Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                1.      *Barile* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                2.      *Rippee* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        F.      Experience and Views of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        G.      Stage of the Proceeding and Amount of Discovery Completed . . . . . . . . . . . 16

        H.      The Reaction of Class Members to the Proposed Settlement . . . . . . . . . . . . . 17

V.      Final Settlement Approval Is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.      The Settlement Is Entitled To A Presumption Of Fairness . . . . . . . . . . . . . . . 18

VI.     Final Settlement Approval Is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Case No. 05CV1359BTM(JMA)

**Plaintiffs' Memo of P&A's in Support of Motion for Final Approval of Class Action Settlement**

# TABLE OF AUTHORITIES

**Federal Cases**

Boyd v. Bechtel Corp.

    (N.D. Cal. 1979) 485 F. Supp.610, 616-17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ellis v. Naval Air Rework Facility

    (N.D. Cal. 1980) 87 F.R.D. 15, 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fisher Bros. v. Cambridge-Lee Indust., Inc.

    (E.D. Pa. 1985) 630 F.Supp. 482, 488 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Metropolitan Housing Dev. Corp v. Village of Arlington Heights

    (7th Cir. 1980) 616 F.2d 1006, 1014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Milstein v. Huck

    (E.D.N.Y. 1984) 600 F.Supp.254, 267 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Officers for Justice v. Civil Service Com'n

    (9th Cir. 1982) 688 F.2d 615, 625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 18

Oppenlander v. Standard Oil, Co.

    (D. Colo 1974) 64 F.R.D. 597, 624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TBK Partners, Ltd. v. Western Union Corp.

    (S.D.N.Y. 1981) 571 F.Supp. 380, 389 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tomlinson v. Indymac Bank, F.S.B.,

    359 F.Supp.2nd 891, 895 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Young v. Kate

    (5th Cir. 1971) 447 F.2d 431, 433-43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**State Cases**

Dunk v. Ford Motor Co.

    48 Cal.App.4th at 1801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 18

Mallick v. Superior Court

    (1979) 89 CA 3d 434 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mills v. Superior Court of Los Angeles,

 135 Cal.App. 4th 1547 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Murphy v. Kenneth Cole Productions, Inc.,

 134 Cal.App.4th 728 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

National Steel and Shipbuilding Company v. Superior Court of San Diego,

 135 Cal.App. 4th 1072 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wershba v. AppleComputer, Inc.

 (2001) 91 Cal.App.4th , 224, 246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Federal Statutes**

Federal. Rules of Civil Procedure Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rules of Civil Procedure 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**State Statutes**

Business & Professions Code Section 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Code of Civil Procedure §382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

California Code of Civil Procedure §1781(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

California Labor Code Section 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Labor Code Section 226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# I.

## INTRODUCTION

The parties to the instant class action and the separate class action captioned <u>Barile, et al.</u> <u>v. Boston Market Corporation; USDC Case No.05 CV 1360 BTM (JMA)</u> have settled the two complex state-wide wage and hour class action cases after a full day of mediation before the Honorable Lawrence Irving (Retired) and two additional arms length settlement conferences between counsel for the parties.[1] The combined present cash fund to both classes is $3,750,000.00. The combined future monetary benefit for both classes is $10,435,087.00.[2]  In addition, non-monetary benefits to the Class Members include (1) retraining all California employees on their rights to meal and rest breaks; (2) providing employees with training materials regarding their meal and rest break rights in both English and Spanish; (3) implementing a timekeeping system whereby any non-complying meal breaks are immediately identified by Defendant's corporation; and (4) payments are issued to employees in their next paycheck.

///

///

///

---

[1]  The two actions will be addressed in this memorandum and this memorandum will be incorporated by reference in the <u>Barile, et al. v. Boston Market Corporation; USDC Case No.: 05CV1360 BTM (JMA)</u>  action for purposes of judicial economy and expediency.

[2]  For purposes of calculating the future monetary benefits to the Store Managers of now receiving their overtime pay, the Plaintiffs used the <u>mid-range</u> of the approximate fifty (50) to sixty (60) hours per week that Restaurant Managers worked.  In other words, the Plaintiffs utilized fifteen (15) hours per week as an approximate number of overtime hours based upon the fact that the job description estimates Managers working between ten (10) to twenty (20) overtime hours per week. (See **Exhibit 8**). Using the midrange number of 15 hours per week, times the Managers' average rate of pay which is $27.75 per hour, a conservative amount for the future monetary benefit to the Manager Class is $5,203,125.00 over five (5) years, because they employ approximately 50 managers at any given time.
     The future monetary value estimated for hourly employees receiving compensation for any non-complying meal breaks over five (5) years was calculated as follows. The hourly employees' average rate of pay is $8.31 per hour. Based upon a review of Defendant's payroll records, Plaintiffs estimate that hourly employees missed meal breaks approximately fifty percent (50%) of the time. There are approximately 994 hourly employees working currently for Defendant's California restaurants and it is anticipated that they worked approximately fifty (50) weeks per year, which takes into consideration two (2) weeks of vacation time. Thus, the future monetary benefit for the hourly employees is $1,032,517.00 per year or $5,162,587.00 over five (5) years.

-2-

Case No. 05CV1359BTM(JMA)
**Plaintiffs' Memo of P&A's in Support of Motion for Final Approval of Class Action Settlement**

1    The Settlement reached is fair, reasonable, and adequate. The Parties are represented by

2    experienced class action counsel who have negotiated and support this settlement. Counsel have

3    entered into the settlement in the belief that it is fair, reasonable and adequate, and respectfully

4    submit that it should be granted final approval by this Court. The neutral claims administrator sent

5    out the notice to the proposed settlement class members as ordered by the Court and provided claim

6    forms and the opportunity to object and/or opt out of the settlement. Only 41 opt-out notices were

7    received. No one, objected to the settlement of either case.

8                                        **II.**

9                        **PROCEDURAL & FACTUAL BACKGROUND**

10    The two complaints in these actions were filed on May 27, 2005. The Rippee action alleges

11   Boston Market violated the California Labor Code by failing to provide meal periods, failing to

12   permit and authorize rest breaks, failing to pay overtime, failing to pay for off-the-clock work and

13   failing to provide accurate wage statements. (See Complaint lodged herewith as **Exhibit 1**). The

14   Barile action alleges that Boston Market violated the California Labor Code by mis-classifying the

15   members of the class as exempt employees and failing to pay them overtime pay. (See Complaint

16   lodged herewith as **Exhibit 2**). The two actions also allege, among other things, that by engaging

17   in wage and hour violations, Boston Market committed unfair trade practices, unfairly competed

18   in violation of the California Business and Professions Code, and is otherwise liable for conversion

19   and theft of labor. The relief sought by Plaintiffs in both actions includes, but is not limited to,

20   monetary damages, penalties, injunctive relief, interest, attorney's fees and costs of the lawsuits.

21    Boston Market denies all liability for such claims and has vigorously defended itself against

22   all of Plaintiffs' claims in both actions. After the two complaints in these actions were filed,

23   Boston Market removed the actions to federal court pursuant to the Class Action Fairness Act

24   ("CAFA"). The Court issued an Order To Show Cause Why Case Should Not Be Remanded in the

25   Rippee action and ordered extensive discovery to allow Boston Market to establish that the amount

26   in controversy exceeded $5,000,000 as required for removal under CAFA. Pursuant to the Court's

27   discovery order, Boston Market's production of information and documents included, but was not

28   limited to, the names of the putative class members in the Rippee action which are approximately

1  6,315 current and former employees, time detail reports for each of the <u>Rippee</u> putative class

2  member, corporate policies and procedures regarding wage and hour requirements, training

3  materials, payroll policies and procedures and bonus plans. (See Order lodged herewith as **Exhibit**

4  **3**).

5      The Court found federal jurisdiction over both actions.

6  **III.**

7  **THE PARTIES HAVE REACHED AN IMMEDIATE MONETARY SETTLEMENT**

8  **FUND OF $3,750,000.00 PLUS FUTURE MONETARY BENEFITS**

9      The proposed class action settlement reflects a careful consideration by each of the parties

10  of the benefits, burdens, and risks associated with continued litigation of this case.  The key

11  elements of the parties' agreement are as follows:

12      •  The claims of all Putative Class Members in both the <u>Rippee</u> and <u>Barile</u> action are

13  settled for a present monetary benefit of up to three million seven hundred and fifty thousand

14  dollars ($3,750,000.00) inclusive of attorneys' fees and costs, which includes all fees and costs

15  incurred to date, as well as all such fees and costs incurred in documenting the Settlement, securing

16  Court approval of the Settlement, and assisting where necessary while Rosenthal & Company

17  administered the Settlement, and obtaining dismissal of the action.  This amount does not include

18  the fees and/or costs to be paid to Rosenthal & Company,  which are to be paid <u>in addition</u> to the

19  Settlement Fund by Defendant, as are Defendant's portion of any withholding taxes; and,

20      •  15% ($562,500) of the present monetary benefit will be allocated to the <u>Barile</u>

21  Litigation.[3]; and,

22

---

23      3  Boston Market recently settled a wage and hour class action in <u>Hakim, et al. v. Boston Market Corporation</u>, Santa Clara Superior Court Case Number 1-03-CV816332 wherein a class of Boston Market general

24  managers and assistant managers alleged wage and hour violations arising out of Boston Market's misclassification of these employees as exempt.  The settlement encompassed the time period  from December 27, 2000 through July

25  6, 2004.  Therefore, the statute of limitations for the overtime claim in the <u>Barile</u> Class is limited to nineteen (19) months and runs from July 7, 2004 to the present. See Complaint lodged as **Exhibit 1**, p. 7 ¶ 26, lines 24-27. In

26  addition, in 2006, a California Department of Labor Decision determined that a Boston Market manager who filed a claim alleging misclassification was in fact exempt and not eligible for overtime. (See Determination lodged herewith

27  as **Exhibit 4**). In light of the abbreviated period of recovery, the DOL's contrary findings on the issue of misclassification (which would have posed a hurdle as to the overtime claim) and the more limited size of the <u>Barile</u>

28  putative class at just 122 versus the 6, 315 putative class members in <u>Rippee</u>, the allotment of 15% of the present monetary benefit to the <u>Barile</u> Class is appropriate.

-4-

1    •    85% ($3,187,500) of the present monetary benefit will be allocated to the <u>Rippee</u>

2    Litigation; and,

3    •    Boston Market has represented that the reclassification as "non-exempt" from State

4    and Federal overtime requirements, as to all members of the <u>Barile</u> class who at the time of

5    reclassification are employed by Boston Market, will be complete by late July or early August 2006

6    (*See* Correspondence from Boston Market, May 8, 2006, lodged herewith as **Exhibit 5**); and,

7    •    Sometime after Preliminary Approval, but prior to this date, Boston Market

8    implemented changes to its time keeping and payroll systems so that in those instances after

9    implementation of the changes where its time records show that a member of the <u>Barile</u> Class or

10   <u>Rippee</u> Class works a shift in excess of five hours without a corresponding entry showing that the

11   employee clocked out for a legally adequate meal break period, that employee is automatically

12   receiving an amount equal to one hour of pay at the employee's regular rate of compensation **with**

13   **his or her next paycheck**, unless the shift is no more than six hours in length and the employee

14   has waived the meal break; and,

15   •    By late July or early August 2006, Boston Market will conduct a training sessions

16   for members of the <u>Barile</u> Class and <u>Rippee</u> Class who are then employed at any of its California

17   Restaurants and explain that employees are permitted and authorized to take rest breaks based on

18   the total hours worked daily at the rate of ten (10) minutes of rest time per four (4) hours worked

19   or major fraction thereof, provided however, that a rest period need not be authorized for

20   employees whose total daily work time is less than three and one-half (3½) hours.  This training

21   will include the distribution of a written notice in Spanish and in English to each such employee;

22   and,

23   •    Plaintiffs seek attorneys' fees of up to $1,500,000.00 plus all costs of litigation  up

24   to $15,000.  Defendant does not object to this request.  This would equal approximately 9.6% of

25   the immediate monetary fund being created <u>combined with</u> a conservative estimate of the future

26   monetary benefit over the next five (5) years.  It is forty percent (40%) of the immediate monetary

27   fund being created and equals less than a 3 multiplier based upon the billable hourly rates of the

28   attorneys prosecuting this action for the Plaintiffs.  Frankly, although Ms. Lorens has handled many

-5-

1   wage and hour class actions over the past ten (10) years, she has never convinced a company before

2   this Settlement to <u>completely change the way they are doing business and treating their employees</u>

3   <u>in the State of California</u>.  This is the first time she has ever been able to obtain full <u>reclassification</u>

4   of a manager class of employees so that they are insured their overtime compensation, as well as,

5   the first time she has been able to negotiate an Agreement whereby employees are paid for

6   noncomplying meal breaks in their **very next paycheck**, unless the meal period is legally waived.

7       After preliminary approval, notice of the proposed settlement and claim forms were sent

8   out to class members.  Said claim forms, as well as the Notice of the Proposed Settlement to the

9   Class, were mailed in accordance with the Court Order at the hearing on Preliminary Approval of

10   this class action settlement, i.e., mailed on or before April 26, 2006.  The deadline to object to or

11   request exclusion from the settlement was May 26, 2006 and the last day to mail claims is June 10,

12   2006.[4]

13       As discussed in more detail below, this settlement is fair, reasonable, and adequate, and

14   should be approved by this Court.

15   **IV.**

16   <u>**TEST FOR DETERMINING WHETHER CLASS SETTLEMENT IS FAIR**</u>

17   <u>**ADEQUATE AND REASONABLE**</u>

18       Pursuant to <u>Wershba v. AppleComputer, Inc.</u> (2001) 91 Cal.App.4th , 224, 246, the Court

19   should consider relevant factors, when determining the fairness and reasonableness of the class

20   action settlement, such as (1) "the strength of Plaintiffs' case; (2) the risk; (3) the expense; (4)

21   complexity and likely duration of further litigation; (5) the risk of maintaining Class Action status

22   through trial; (6) the amount offered in settlement; (7) the extent of discovery completed and the

23   stage fo the proceedings; (8) the experience and views of counsel; (9) the presence of a

24   governmental participant; and, (10) the reaction of class members to the proposed settlement."  The

25   court stated that the list of factors is not exclusive and the court is free to engage in a balancing and

26   weighing of factors depending on the circumstances of each case.

27

28      [4]    The Court was advised at the Preliminary Approval Hearing that a Final Claims Report from
Rosenthal & Company will not likely be available prior to the Final Approval Hearing scheduled for June 14, 2006.

-6-

1    As set forth in the declarations filed herewith, including the Declaration of Mediator

2   Lawrence J. Irving (Ret.), the parties believe this settlement to be fair, reasonable, and adequate,

3   and in the best interest of the Class Members.  After intense litigation, the parties are in the best

4   position to assess the relative strengths and weaknesses of their positions.  As a result, the parties

5   have made informed assessments of the costs and risks of continued litigation.  The parties are

6   aware that continued litigation would include a Motion for Class Certification, additional motions

7   regarding the utilization of a survey for purposes of obtaining additional information from the Class

8   Members, many depositions, hundreds of thousands of pages of additional document review, a

9   likely Motion to De-Certify the Class, the potential for writs, the uncertainty of a complex and

10   lengthy jury trial, and the likelihood of years of post-trial appeals, which in the end would provide

11   no immediate resolution and closure of this litigation, or any additional clarity of the outcome, and

12   certainly no guaranteed result as the Class Members will obtain by way of this settlement.  Indeed,

13   the parties recognize that there is a credible risk that continued litigation may result in no additional

14   benefits being conveyed to the Class at all.

15    This settlement agreement, therefore, represents a considered compromise of disputed

16   claims which provide benefits to the Class, closure of this dispute for the Defendant, preservation

17   of judicial resources, and furtherance of the clear public policy toward voluntary settlement of legal

18   claims.

19    In approving a settlement, the Court's overriding concern is whether the proposed

20   settlement as a whole is fair, reasonable, and adequate.  Dunk v. Ford Motor Co. 48 Cal.App.4th

21   at 1801, citing Officers for Justice v. Civil Service Com'n (9th Cir. 1982) 688 F.2d 615, 625; Fed.

22   Rules Civil Procedure Rule 23).  The Court, however, "need not inquire into the precise legal rights

23   of the parties nor reach and resolve the merits of the claims or controversy" in making this

24   determination.  Metropolitan Housing Dev. Corp v. Village of Arlington Heights (7th Cir. 1980)

25   616 F.2d 1006, 1014.  The Court's role in overseeing settlements, while important, is necessarily

26   a limited one.  The Ninth Circuit has held:

27    [T]he court's intrusion upon what is otherwise a private consensual agreement
     negotiated between parties  to a lawsuit must be limited to the extent necessary to
28    reach a reasoned judgment that the agreement is not the product of fraud or

-7-

1  overreaching by, or collusion between, the negotiating parties, and that the
2  settlement, taken as a whole, is fair, reasonable, and adequate to all
   concerned...The proposed settlement is not to be judged against a hypothetical or
3  speculative measure of what might have been achieved by the negotiators.

4  Officers for Justice v. Civil Service Commission (9th Cir. 1982) 688 F.2d 615, 625; see also Dunk

5  v. Ford Motor Co. 48 Cal.App.4th at 1801.  A presumption of fairness exists where the settlement

6  is reached through arm's length bargaining, investigation and discovery are sufficient to allow

7  counsel and court to act intelligently, counsel is experienced in similar litigation, and the

8  percentage of objectors is small.  Id. at 1802.

9  **A.    Strength of the Plaintiffs' Case.**

10            This was a class action for violation of the California Labor Code, and the regulations

11  relating thereto.  The case was complex and difficult in great part because the law in this area is

12  currently in a state of flux.  For instance, as to the meal and rest period claim alleged in the two

13  actions, there are significant questions currently as to whether or not violations of Labor Code

14  Section 226.7 constitute wages or penalties. This is such a novel and difficult area at this time, that

15  it is considered by attorneys working in this area, to be an area that will be undecided for several

16  years. In the California State Court, the issue is currently pending before the Supreme Court.  Two

17  (2) State Court of Appeals have ruled that the remedy is a penalty and the Fourth District Court of

18  Appeals ruled it was a wage.  Likewise, the matter is disputed in the United States District Courts

19  in the State of California.  In Tomlinson v. Indymac Bank, F.S.B., 359 F.Supp.2nd 891, 895 (C.D.

20  Cal. 2005), the District Court held that the payments under Section 226.7 are "restitutionary"

21  because they are "earned wages," akin to overtime wages.  Id. at 895-897. However, in Pulido v.

22  Coca-Cola Enterprises, Inc., USDC Case No. ECDV06-406-VAP(OPX), (May 26, 2006), the court

23  held that payments due under Labor Code Section 226.7 are penalties not wages.  In addition, the

24  court in Coca-Cola ruled that waiting time penalties are not recoverable under Labor Code Section

25  203 and that such payments cannot be the subject of an unfair competition claim under Business

26  & Professions Code Section 17200.  The court also held that no claim for conversion could be

27  stated for infractions of the Labor Code.  While the law is unsettled, and Plaintiffs still believe that

28  Labor Code Section 226.7 violations constitute wages, the ongoing dispute in the courts regarding

-8-

1 this issue make it clear that the settlement in this case is not only fair and reasonable but quite

2 good.

3   As discussed above, Plaintiffs believe that their claims for missed meal and rest breaks are

4 strong. However, there are risks that attend this litigation. Not only does Boston Market strongly

5 deny and defend against the factual allegations made, there are legal uncertainties that impact

6 Plaintiffs' claims, as described above.

7   The courts of appeal in both <u>Murphy v. Kenneth Cole Productions, Inc.</u>, 134 Cal.App.4th

8 728 (2005) and <u>Mills v. Superior Court of Los Angeles</u>, 135 Cal.App. 4th 1547 (2006) found that

9 the payments constitute a penalty. The court of appeal in <u>National Steel and Shipbuilding</u>

10 <u>Company v. Superior Court of San Diego</u>, 135 Cal.App. 4th 1072 (2006) held that the payment

11 constitutes a wage. Moreover, in <u>Mills</u>, the court held that if all breaks are missed during an eight-

12 hour shift, <u>only one</u> hour's pay is due. As discussed above, the uncertainties as to the outcome of

13 these issues caused the parties to seek a compromise.

14   In addition, the Labor Commissioner has issued an order in <u>Hartwig v. Orchard</u>

15 <u>Commercial, Inc.</u> DLSE Case No. 12-56901 RB, finding that payments for the meal and rest breaks

16 are a penalty. The order has been characterized as a precedential decision. Further, with regard

17 to the <u>Barile</u> action the Department of Labor has issued a determination in at least one case that a

18 General Manager seeking overtime compensation was in fact exempt. (See **Exhibit 4**).

19   The same issue arises in connection with the General Managers' claims for missed meal

20 and rest breaks. In addition, Boston Market contends that meal and rest claims for the General

21 Managers were released as part of the previous class action. Further, the General Managers have

22 much more flexible schedules. Thus, establishing that they did not have a free thirty (30) minutes

23 for meal breaks or ten (10) minutes for rest breaks would be difficult.

24   Regarding the "off-the-clock" sub-class, the issues were unique and difficult because

25 commonality was difficult to establish. Many Boston Market employees did in fact work off-the-

26 clock, but some of them worked off-the-clock only once or twice in a career while others worked

27 off-the-clock on nearly a daily basis. All of these issues created questions about the amount of

28 individual analysis required and special concerns regarding the element of commonality in this

1   purported class action.

2   In addition, Defendant's financial condition has always been a significant factor in

3   evaluating the actions. It was very difficult for Plaintiffs' counsel to argue that Defendant should

4   settle for more than it earned last year. To prosecute a case of this magnitude, which could easily

5   entail several million dollars of attorney time as well as hundreds of thousands of dollars in costs,

6   to find at the "end of the day" that the Defendant is unable to pay the Judgment is not in the best

7   interest of anyone involved, especially the Putative Class.

8   As further concern, in July 2004, Defendant settled a wage and hour class action for alleged

9   misclassification of general managers for a total amount of $1,250,000.00. No agreement to

10   reclassify the General Managers was reached, in that matter. The agreement to reclassify in this

11   case is a substantial improvement over the settlement in the Hakim case. Plaintiffs were well aware

12   of the fact that if they did in fact prevail at trial on both actions not only might Defendant declare

13   bankruptcy (depending on the size of the verdict) but, Defendant was certain to pursue lengthy and

14   costly appeals.

15   Counsel for the putative class believe that the benefits of settling now far outweigh the risk

16   of continued litigation. Despite the fact that the outcome of a trial might be more favorable to the

17   putative class, the likelihood of recovering on such a judgment is questionable. This case would

18   likely continue long after trial. The risk of losing a large verdict on appeal is significant. This

19   factor combined with Defendant's financial condition supported the decision to enter into a

20   settlement valued at $3,750,000 in present benefits and approximately $10,500,000.00 in future

21   benefits which includes 1) reclassifying as "non-exempt" all members from the Barile class; 2)

22   implementing changes to time keeping and payroll systems so that the Barile class or Rippee class

23   members are compensated for improperly missed meal periods; and 3) training sessions for

24   members of the Barile class and Rippee class regarding their right to rest periods in both English

25   and Spanish.

26   At the Preliminary Approval Hearing, the Court stated that the settlement seemed fair,

27   reasonable, and adequate and as to the attorneys' fee request "if everything you say pans out,

28   without prejudice to the objections, I don't think that the request for attorneys' fees is

-10-

1  unreasonable." (Reporter's Transcript, 4-5-2006, pg. 6, lns. 18-20, lodged as **Exhibit 6** herewith).

2  However, the Court expressed concerns as to whether or not Boston Market would in fact

3  implement the future benefits such as re-classification, making systematic changes to its time

4  keeping system to ensure that employees who missed their breaks are compensated therefore in

5  their next paycheck, and the retraining of employees as to their rights to meal and rest breaks in the

6  State of California.

7  Due to the Court's concerns, Boston Market agreed to "speed up" the implementation of

8  these future benefits.  The time keeping system is now in place and Plaintiffs' counsel have been

9  advised by a current General Manager that Boston Market's Human Resources Department

10  indicated approximately $60,000.00 in non-complying break payments were issued to current

11  employees, in the first pay period following the implementation of that new time keeping system.

12  Boston Market has indicated that the reclassification will be complete by late July or early August

13  2006 and that the retraining will also occur during that time period.  (*See* **Exhibit 5**, lodged

14  herewith).

15  **B.**    **The Expense.**

16  Defendant has vigorously defended itself in these actions, and further pursuit of them by

17  Plaintiffs would not necessarily produce a better result.  Shortly after the two actions were filed in

18  state court, Class Counsel served Boston Market with extensive discovery requests and deposition

19  notices.   The discovery included form interrogatories, special interrogatories, requests for

20  production of documents and requests for admission.  Discovery was temporarily stayed as a result

21  of Boston Market's removal of both cases.  However, the Court in   Rippee then ordered Boston

22  Market to produce thousands of documents to establish whether the case was properly before the

23  Court pursuant to CAFA.   The parties then engaged in several contentious discussions and

24  consumed numerous hours determining the scope and extent of the Court's order and sought

25  follow-up guidance from the Court on three (3) occasions.

26  Boston Market ultimately produced over 37,000 documents containing the putative class

27  names in the Rippee action, employee time detail reports for each Rippee class member, corporate

28  policies and procedures regarding wage and hour requirements, training materials, payroll policies

1  and procedures and bonus plans.  Plaintiff's counsel spent literally weeks in the tedious process of

2  reviewing the above-referenced documents, page by page, so that each document could then be

3  analyzed and placed in context.

4       Class Counsel estimates that between the time this litigation was commenced to the point

5  of resolution they have incurred almost $500,000.00 in attorneys' fees based on their regular billing

6  rates (the rates they charge clients who pay by the hour).  Ms. Lorens does "time and motion"

7  studies of the cost of her overhead by the hour and determined that it currently costs approximately

8  $125.00 per hour for her to run her law office while handling these types of class actions.  Thus,

9  the overhead alone (not counting the number of cases which are turned down while class actions

10  such as these are being handled by a small law firm) approximates $125,000.00.  Further, although

11  Class Counsel were able to shift many costs to Defendant in this case, they were anticipating

12  advancing costs of up to $1,000,000.00 through trial.  The risk in these cases are overwhelming for

13  small law firms as the loss of any one of these cases could cause the law firm to find itself

14  insolvent.

15  C.    **Complexity and Likely Duration of Further Litigation.**

16       Unless the proposed settlement is clearly inadequate, its acceptance and approval are

17  preferable to the continuation of lengthy and expensive litigation with uncertain results.   TBK

18  Partners, Ltd. v. Western Union Corp. (S.D.N.Y. 1981) 571 F.Supp. 380, 389.  As the court

19  observed in Oppenlander v. Standard Oil, Co. (D. Colo 1974) 64 F.R.D. 597, 624 (citations

20  omitted):

21        [T]he court should consider the vagaries of litigation and compare the significance
          of immediate recovery by way of the compromise to the mere possibility of relief
22        in the future, after protracted and expensive litigation. In this respect, 'It has been
          held proper to take the bird in the hand instead of a prospective flock in the bush'
23

24       The present settlement must be balanced against the expense of seeking a more favorable

25  result at trial,  Young v. Kate  (5th Cir. 1971) 447 F.2d 431, 433-43, and "[t]he expense and

26  possible duration of the litigation are major factors to be considered in evaluating the

27  reasonableness of [a] settlement." Milstein v. Huck (E.D.N.Y. 1984) 600 F.Supp.254, 267 (citation

28  omitted); Boyd v. Bechtel Corp. (N.D. Cal. 1979) 485 F. Supp.610, 616-17.)

-12-

1  Litigation of this case has already consumed a considerable amount of time.  Further

2  evidence of the fairness of the settlement is that it is endorsed by an experienced mediator.  (See

3  Declaration of Judge Irving, lodged herewith as **Exhibit 7**).  A declaration from the Mediator has

4  been filed with this motion attesting to the fairness of the settlement.

5  Further, with regard to the Meal and Rest Break claims and as more fully discussed above

6  there is currently conflicting appellate authority regarding whether the one hour's pay for missed

7  meal or rest breaks constitutes "wages" or "penalties."  If the payment is a penalty, a claim for that

8  payment is covered by a one-year statute of limitations.  Otherwise, the claim is considered a wage

9  and is covered by a three-year statute of limitations and also permits restitution under a four-year

10  statute of limitations.  Further, with regard to the Barile action the Department of Labor has issued

11  a determination in at least one case that a General Manager seeking overtime compensation was

12  in fact exempt.  (See **Exhibit 4**).

13  Counsel for the putative class believe that the benefits of settling now far outweigh the risk

14  of continued litigation.  Despite the fact that the outcome of a trial might be more favorable to the

15  putative class, the likelihood of recovering on such a judgment is questionable.  This case would

16  likely continue long after trial.  The risk of losing a large verdict on appeal is significant.  This

17  factor combined with Defendant's financial condition supported the decision to enter into a

18  settlement valued at $3,750,000 in present benefits and approximately $10,500,000.00 in future

19  benefits which includes 1) reclassifying as "non-exempt" all members from the Barile class; 2)

20  implementing changes to time keeping and payroll systems so that the Barile class or Rippee class

21  members are compensated for improperly   missed meal periods; and 3) training sessions for

22  members of the Barile class and Rippee class regarding their right to rest periods in both English

23  and Spanish.

24  **D.      The Risk of Maintaining Class Action Status Through Trial.**

25  Although Class and Defense Counsel would disagree on the likelihood of such a motion,

26  the risk is nonetheless real.

27  / / / / /

28  / / / / /

-13-

E.    **The Amount Offered In Settlement.**

This settlement (based upon a review of other wage and hour cases settled in the state of California) is substantial and has had a significant impact on the work lives of all employees at Boston Market.

*1.    Barile*

Defendant is reclassifying all members of the <u>Barile</u> Class as Non-Exempt. The General Manager lawsuit alleges Boston Market required General Managers to work a minimum of fifty (50) to sixty (60) hours per week, routinely working then between sixty (60) to seventy (70) hours per week. Defendant's job description calls for General Managers to work at least five (5) days per week, ten (10) to twelve (12) hours per day, including evenings, weekends, and holidays. This translates to a 50 to 60 hour workweek. Defendant's job description further calls for   General Managers to schedule eighty percent (80%) of their time around the restaurant's peak business. (See Job Description, lodged herewith as **Exhibit 8**). The reclassification of these   General Managers to non-exempt status requires Boston Market to compensate General Managers at the overtime rate, currently approximated at $27.75 per hour, for hours worked in excess of eight (8) in a day and/or forty (40) in a week. Assuming that General Managers work an average of 15 hours per week in overtime, which is within the 10 to 20 hour range currently required, the value of the future monetary benefit is approximately $5,203,125.00 over the next five years.  The figure of $5,203,125.00 is arrived at by multiplying the overtime rate of $27.75 per hour  times 15 overtime hours per week times 50 workweeks per year.  This amount is then multiplied by  50 (the general manager positions at the Boston Market locations in California) and then by 5 years to reach a conservative future monetary value of re-classification.

*2.    Rippee*

Defendant has implemented changes in the punch clock system so that shifts for which a meal break is required must show  thirty (30) minutes clocked out for the meal break or else one (1) hour's worth of wages <u>is automatically being paid</u> the employee in their <u>next paycheck</u>, absent a proper waiver.  Plaintiffs estimate the value of this change to be approximately $5,162,587 to hourly employees over the next five years.  The figure of $5,162, 587 is arrived at by multiplying

-14-

1  $8.31 or the average rate of pay for hourly employees times approximately 994 hourly employees

2  times 5 days per week times 25 weeks per year (because Plaintiffs estimate based on their discovery

3  that the violation rate for hourly employees receiving their thirty (30) minute lunch breaks was

4  50%).[5]

5       Defendant also will retrain all class members on their right to rest breaks. Defendant will

6  engage in reasonable efforts to provide written notification in English and Spanish to current and

7  future employees of permission and authorization to take rest break(s).

8       Further, as attested to in the Declarations of the Class Representatives, the value of the

9  programmatic changes will have a tremendous effect on individual's personal lives.   The

10  Settlement guarantees the Class Members a certain recovery from Defendant in addition to

11  significant programmatic changes.

12       Moreover, although the request for attorneys fees is $1,500,000.00 or 40% of the immediate

13  monetary fund being created, if the requested attorney fees are viewed in the context of the

14  approximate $10,435,087.00 in future **monetary** benefits, the percentage is approximately 9.6%

15  of the conservative estimated monetary value of this Settlement, i.e., $14,115,712.00.  A review

16  of class action settlements over the past fifteen (15) years shows that courts have historically

17  awarded fees in the range of 25-50% or more, depending on the circumstances of the case.  For

18  comparison purposes, in Crandall v. U-Haul (LASC, Case No. BC178775) the Honorable Steven

19  Czuleger awarded a 40% attorney fee request in an overtime exemption class action; in Bushnell

20  v. Cremar, Inc. (OCSC Case No. 657778) the Honorable Donald E. Smallwood awarded

21  attorneys's fees in the amount of 38%; in Abzug v. Kerkorian, CA000981 (Los Angeles Superior

22  Court, November 1990), the Honorable R. William Schoettler awarded a 45% fee; in Haitz v.

23  Meyer, et.al., Alameda County Superior Court, 8-20-1990 No. 572968-3, the court awarded a 40%

24  fee; in Steiner v. Whittaker Corp. CA000817 (Los Angeles Superior Court, 32389) Judge Ely

25  Chernow awarded a 35% fee; in Albrecht v. Rite Aid SDSC Case No. 729298, the Honorable J.

26  Richard Haden ordered a 35% fee to these same attorneys on a settlement of $25,000,000.00; in

27

28
---
    [5]    Plaintiffs' Counsel has been advised that approximately $60,000.00 has already been paid as a result of this change.  Defendants won't disclose the exact number due to financial and proprietary issues but has confirmed the amount is "significant" and "substantial."

-15-

1   Elliott v. Clothestime (OCSC Case No. 01-CC00333 on 5/12/2005) the Honorable Jonathan

2   Cannon awarded a 40% fee to these same attorneys in a wage and hour class action which had not

3   proceeded to the Class Certification stage. Therefore, the $1,500,000.00 fee being requested in this

4   case is fair, reasonable, and in line with fees in cases such as these, as it is 40% of the **immediate**

5   cash fund being created **but only 9.6%** of the approximate total monetary fund being created when

6   looking at the immediate cash fund combined with the future monetary benefit in this case.

7   **F.      Experience and Views of Counsel.**

8              Experienced counsel, operating at arm's length, have weighed all of the factors discussed

9   herein and endorse the settlement.  Courts have stated that the view of the attorneys actively

10  conducting this litigation, while not conclusive, is "entitled to significant weight." Fisher Bros. v.

11  Cambridge-Lee Indust., Inc. (E.D. Pa. 1985) 630 F.Supp. 482, 488; Ellis v. Naval Air Rework

12  Facility (N.D. Cal. 1980) 87 F.R.D. 15, 18.  Both counsel for Plaintiffs and Defendant, based on

13  their knowledge of this case from its inception, have agreed to the settlement and agree that the

14  settlement is fair, reasonable, and adequate.  (See Declarations of Counsel filed herewith).

15  **G.      Stage of the Proceeding and Amount of Discovery Completed.**

16             Plaintiffs propounded numerous and extensive discovery requests via written discovery.

17  Although discovery was temporarily stayed, the Court in Rippee ultimately ordered Boston Market

18  produce thousands of documents in categories which overlapped with categories in the discovery

19  requests initially propounded by Class Counsel.

20  •      Plaintiffs initially propounded two sets of the following discovery in each action:

21  •      Plaintiffs' First Form Interrogatories Propounded to Boston Market;

22  •      Plaintiffs' First Special Interrogatories Propounded to Boston Market;

23  •      Plaintiffs' First Request For Production of Documents Propounded to Boston

24         Market;

25  •      Plaintiffs' First Request for Admissions Propounded to Boston Market;

26  •      Notice of Taking Oral Deposition of PMK Re General Managers;

27  •      Notice of Taking Oral Deposition of PMK Re Document Retention Policies;

28  •      Notice of Taking Oral Deposition of PMK Re Non-Exempt Employees.

-16-

Case No. 05CV1359BTM(JMA)
**Plaintiffs' Memo of P&A's in Support of Motion for Final Approval of Class Action Settlement**

1    The discovery ordered and conducted included the following:

2    1.    Production of in excess of 37,000 documents which included, but was not limited

3    to, the names of the putative class members in the Rippee action (which are approximately 6,315

4    current and former employees) time detail reports for each of the Rippee putative class members,

5    corporate policies and procedures regarding wage and hour requirements, training materials, payroll

6    policies and procedures and bonus plans; and,

7    2.    After printing the approximate 37,000 pages of documents Plaintiffs' counsel spent

8    an additional month reviewing and analyzing those documents; and,

9    3.    Investigation and interviews of numerous witnesses; and,

10    4.    Preparation of class-wide liability and damages estimates in preparation for the

11    mediation by calculating violation rates, number of putative class members, hourly rates and

12    workweeks; and,

13    5.    Analysis of Dunn & Bradstreet reports, public financial data regarding Boston

14    Market's viability and  growth and analysis of public data regarding Boston Market's financial

15    condition.

16    It is difficult to imagine anyone would dispute that both sides engaged in significant

17    discovery and are well educated on the strengths and weakness of their cases.  The Settlement is

18    the product of hard fought adversarial negotiations.

19    **H.    The Reaction of Class Members to the Proposed Settlement.**

20    A Declaration from the Class Action Administrator, Daniel Rosenthal, of Rosenthal &

21    Company, LLC was filed on June 1, 2006, outlining the small number of Requests for Exclusion

22    from the Class Action Settlements, and indicating that   no one objected to either of the two

23    settlements. Further, based on the phone calls received by Class Counsel from the Class Members,

24    along with the comments to the Class Representatives directly, it is clear that the Class Members

25    are quite pleased with the result in this case. (*See* Declarations of Lorens, Cadena, Barile, Rippee,

26    and Ponce, filed herewith).

27    In addition, some of the Class Members had difficulty understanding the Claim Forms.

28    Defendants agreed to pay for Spanish speaking translators at Rosenthal & Company to assist in this

1   regard.  Although it was not required in the Settlement Agreement, the Defendant also paid to

2   translate the Rippee Claim Form into Spanish and that claim form was provided to anyone who

3   requested a Spanish copy of said claim form.  Further, although the agreement was that Defendants

4   would pay only for a national address search prior to the mailing of the claim forms, Defendants

5   thereafter agreed to additional searches on approximately 1,400 claim forms that were returned as

6   undeliverable.  Every possible effort was made to ensure that Class Members received claim forms

7   and that they understood the claim forms and their rights to opt-out, object, or dispute the data

8   contained in the claim forms.

9                                                 V.

10                  **FINAL SETTLEMENT APPROVAL IS APPROPRIATE**

11          Pursuant to both State and Federal Rules of Civil Procedure, "a class action shall not be

12   dismissed or compromised without the approval of the court, and notice of the proposed dismissal

13   or compromise shall be given to all members of the class in such manner as the court directs . . ."

14   CCP §1781(f); Fed. R. Civ. P. 23(e).  In deciding whether to grant final approval to a proposed

15   class action settlement under CCP §382, the court's overriding concern is whether the proposed

16   settlement is "fair, adequate, and reasonable."  Dunk v. Ford Motor Company (1996) 48 CA 4th

17   1794, 1801 (quoting Officers for Justice v. Civil Service Com. (9th Cir. 1982) 688 F.2d 615, 625,

18   cer. denied (1983) 459 U.S. 1217).  The settlement of a class action follows three parts: (1)

19   Preliminary approval of the proposed settlement; (2) Notice to Class Members, and (3) A Final

20   Approval or "Fairness Hearing" at which evidence and argument are heard on the fairness,

21   adequacy, and reasonableness of the settlement.  The Court has given preliminary approval of the

22   settlement, Notice has been mailed to all Class Members by first class mail, in a timely fashion and

23   in accordance with the Order of this Court.

24   A.      **The Settlement Is Entitled To A Presumption Of Fairness.**

25          A presumption of fairness exists where: (1) The settlement is reached through arm's length

26   bargaining; (2) Investigation and discovery are sufficient to allow counsel and the court to act

27   intelligently; (3) Counsel is experienced in similar litigation; and (4) The percentage of objectors

28   is low. Dunk v. Ford Motor Company, supra, 48 CA4th at 1802. The trial court has broad powers

-18-

1    to determine fairness.  Mallick v. Superior Court (1979) 89 CA 3d 434.

2          As demonstrated above, this settlement deserves a presumption of fairness because it has

3    been reached through arms length negotiations, which occurred over one (1) mediation session and

4    two additional arms length settlement conferences between counsel for the parties between

5    December 2005 through February 2006.  The investigation and discovery prior to settlement were

6    more than sufficient to allow counsel to act intelligently in negotiating the settlement.  Counsel is

7    experienced in similar litigation (See Declarations of L. Tracee Lorens and Raul Cadena filed

8    herewith), and there are no objections to the Settlements.  The standards for Final Approval have

9    been met.

10                                            **VI.**

11                  **FINAL SETTLEMENT APPROVAL IS APPROPRIATE**

12          Accordingly, Class Counsel respectfully request that this Court grant Final Approval of the

13    settlement; approve attorneys' fees and costs to Class Counsel, in an amount more fully set forth

14    in Class Counsel's Motion for Attorneys' Fees and Costs, approve enhancements to the Class

15    Representatives as more fully discussed in Plaintiffs' Motion for Fees, Costs and Enhancements,

16    and enter judgment accordingly.

17    Dated: __6-7-06__                           **LORENS & ASSOCIATES, APLC**

18
                                            By: _____
19                                               L. Tracee Lorens
                                                 Attorneys for Plaintiffs
20    Dated: __6-7-06__                           **CADENA CHURCHILL, LLP**
21
22                                           By: _____
                                                 Raul Cadena
23                                               Attorneys for Plaintiffs

24

25

26

27

28

-19-